IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT COURT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| KAREN FREEMAN | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 26-cv-6171 |
| v. | ) | |
| | ) | Amount Demanded: $1,000,000+ |
| AMERICAN COLLEGE OF | ) | |
| SURGEONS, | ) | Jury Trial Demanded |
| KATHLEEN McCANN AND | ) | |
| DR. MICHAEL SUTHERLAND | ) | |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiff, Karen Freeman ("Freeman" or "Plaintiff"), complains of Defendant American College of Surgeons ("ACS"), Kathleen McCann ("McCann") and Dr. Michael Sutherland ("Sutherland"); and seeks appropriate judicial relief, stating as follows:

### JURISDICTION

1. Plaintiff asserts two claims under 42 U.S.C § 1981. Since Plaintiff asserts federal claims, the Court has jurisdiction pursuant to 28 U.S.C § 1331.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this district and division.

1

## PARTIES

3. ACS is a professional medical association for surgeons and surgical team members, founded in 1913. It reports a membership of 90,000 in 144 countries. Its principal place of business is located in Chicago, Illinois.

4. Freeman is an African-American female with significant professional experience in general management. She is a proven visionary leader who translates organizational strategy into exceptional results. She holds a bachelor's degree in Business from Hampton University in Virginia, and Masters of Science degree in Public Services from DePaul University in Chicago, Illinois. From 1998 through May 2016, she worked for The American College of Healthcare Executives as an Administrative Manager and then as Assistant Director of Customer Service.

5. Defendant McCann was at relevant times employed by ACS as Associate Vice President. She is Caucasian.

6. Defendant Sutherland was at relevant times employed by ACS as Senior Vice President. He is Caucasian.

## BACKGROUND FACTS

7. On or about September 2, 2016, Freeman accepted a written offer of employment from ACS as a Manager, Domestic and International Credentials for the Division of Member Services. Her annual salary was $65,000. In addition to her salary (which has since increased to about $90,000 per year), she was eligible for

benefits that are available to all full-time employees, including participation in a 401(K) plan.

8.  Freeman hit the ground running. Over the next six years, she performed very well in her role and enjoyed her work. She consistently met and at times exceeded performance expectations as evidenced by her supervisor's evaluations. Then things suddenly changed, which led her to miss at least four weeks of work and incur substantial medical expenses exceeding $30,000.

9.  In February 2021, a co-worker, Defendant McCann, who is Caucasian, and was at the time two positions above Freeman, went around Freeman and gave or suggested duties to one of Freeman's direct reports, and essentially interfered with Freeman's employment duties.

10. When Freeman complained to McCann about this, McCann became upset and has since gone out of her way to frustrate Freeman's career through micro-aggression, gas lighting, insults, constant unwarranted criticism, lack of support, belittling, silent treatment and other emotionally abusive and discriminatory conduct that amounted to subjecting Freeman to different terms of employment than other similarly-situated non-African American ACS employees.

11. In January 2022, Sutherland joined ACS. Sutherland and McCann then formed a tag team that has been effectively terrorizing African American ACS employees with salient micro aggression and gas lighting, creating an extremely

toxic and psychologically damaging culture where there are two classes of employees: African-American, who are there to be seen, relentlessly and irrationally criticized and not heard, and everyone else. Almost every African-American employee at ACS if not all of them walks on egg shells because of Sutherland and McCann. Every organizational failure or shortcoming, regardless of cause, is blamed on them. This conduct is psychologically damaging.

12. Around March 2026, McCann assigned one of her subordinates to observe and record the activities of Freeman's African-American and only African-American direct reports, tracking their time for almost a month. This was no doubt a racially-motivated act of intimidation.

13. Shockingly but not surprisingly, in 2025, even though he is not Freeman's supervisor, in his disdain and dislike for African American employees, Sutherland directed Ms. Cory Petty ("Petty"), who is Freeman's direct supervisor, to give her a standardless Performance Improvement Plan ("PIP") two days after her performance evaluation, although her evaluation was rated as meeting expectations. The PIP lacked measurable goals, objective criteria, a defined end date, or examples of actual performance deficiencies.

14. Petty, as Freeman's direct supervisor, is the person who is best placed to evaluate her. Sutherland's direction had nothing to do with Freeman's performance, but his (and McCann's) personal dislike of Freeman, because she had in 2022 called

out McCann for her disrespect and interference of Freeman's right to enjoy a work environment that is free of racial discrimination and micro aggression.

15. Because of their disdain for African American employees, McCann and Sutherland have created a de facto rule whereby while they have an open door policy for other employees, African American employees who are not their direct reports (there is only one African-American direct report) are not allowed to engage them directly.

16. Freeman has previously expressed these concerns to her supervisor, ACS Human Resources and to the Chief Executive Officer herself directly and indirectly multiple times. However, no action has been taken to remedy these serious workplace violations, which continue. Instead, the work environment has become more toxic.

17. Freeman has been retaliated against through issuance of alleged performance improvement plans that have no objective standard and subject her to unjustified, increased scrutiny or surveillance, and appear to be paperwork created to make her more frustrated or to force her out without a reasonable basis, just before her pension benefits accrue on or about September 30, 2026. These actions have caused Freeman severe mental distress, which has forced her to take at least four months off work and seek medical attention, now for years, incurring thousands of dollars in medical expenses in the process.

5

18. ACS is responsible for McCann and Sutherland's conduct where, as alleged here, they were working within the scope of their employment. McCann and Sutherland directly and intentionally participated in conduct constituting a violation of Freeman's rights under applicable statutes, including 42 U.S.C. § 1981.

**COUNT ONE**
**VIOLATION OF 42 U.S.C. § 1981**

19. Plaintiff re-alleges and re-asserts paragraphs 1-18 as if fully set forth herein.

20. At all times relevant hereto, Plaintiff was an employee and Defendant ACS was her employer. Sutherland and McCann were Plaintiff's co-workers.

21. At all relevant times, 42 U.S.C. § 1981 ("Section 1981") provided in part that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

22. At all relevant times, 42 U.S.C. § 1981 provided that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

23. At relevant times, Defendant ACS, through its employees and agents,

6

including but not limited to Sutherland and McCann, intentionally discriminated against Freeman by denying her the same terms and conditions of employment available to employees who were not black.

24. At relevant times, in Chicago, Illinois, McCann and Sutherland subjected Freeman to harmful psychological manipulation through various tactics, including gas lighting, silent treatment, withholding of resources and unwarranted criticisms in order to make her feel unworthy and incompetent solely on the basis of her race, African-American but did not subject other similarly situated employees or co-workers to the same unfavorable treatment.

25. Freeman was subjected to unequal, hostile, discriminatory treatment and harassment because of her race, black.

26. Defendants treated other similarly situated Caucasian or non-black employees or co-workers more favorably than Plaintiff.

27. Defendants' conduct interfered with the terms and conditions of Plaintiff's employment. The conduct was severe, unwelcome and pervasive. It was also willful and wanton.

28. Defendants' unlawful and discriminatory conduct in violation of Section 1981 was outrageous, reckless and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

29.Defendants' actions in engaging in and permitting race-based discrimination against Plaintiff caused her to suffer emotional distress, humiliation, anxiety, pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, loss of enjoyment of life, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiff prays that this court enter judgment on her behalf and against Defendants for actual, compensatory, punitive and consequential damages in excess of $1,000,000.

## COUNT TWO
### RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

30.Plaintiff re-alleges and re-asserts paragraphs 1-18 as if fully set forth herein.

31.Defendants retaliated against Plaintiff after she complained about racial harassment, hostile work environment and discrimination by directing her manager to place her on an unwarranted, standardless performance improvement plan, and subjecting her to other psychologically damaging conduct, including gas lighting, silent treatment, unwarranted and undeserved criticism and denial of support, which caused Plaintiff mental distress that was so severe that she had to take at least four months off work, and incur substantial damages in lost wages and medical expenses.

32.Defendants acted with malice or reckless indifference to the federally protected rights of Plaintiff.

33.As a result of Defendants' retaliation, in violation of 42 U.S.C. § 1981, Plaintiff has suffered severe emotional distress, humiliation, depression, anxiety,

pain and suffering, lost wages and benefits, future pecuniary losses, inconvenience and loss of enjoyment of life, and other compensatory and consequential damages.

34. Defendants' conduct was severe, unwelcome and pervasive. It was also willful and wanton, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**WHEREFORE**, Plaintiff prays that this court enter judgment on her behalf and against Defendants providing:

A. Defendants have retaliated against Plaintiff in violation of § 1981;

B. All wages and benefits Plaintiff would have received but for the violation of 42 U.S.C. § 1981;

C. An order of back pay, front pay and benefits for a reasonable period of time;

D. Compensatory and punitive damages;

E. Attorneys' fees and costs;

F. Pre-judgment interest;

G. Post-judgment interest; and

H. Such other and further relief as the Court deems appropriate.

## JURY DEMAND

35. Plaintiff hereby demands a trial by jury of twelve pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all triable issues.

9

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Karen Freeman, respectfully prays that this Honorable Court enter judgment on her behalf and against Defendants, jointly and severally, as follows:

A. That Plaintiff be awarded damages for lost salary and wages, including back pay and front pay;

B. That Plaintiff be awarded damages for lost benefits including valuable retirement contributions and/or entitlements;

C. That Plaintiff be awarded punitive damages;

D. That Plaintiff be awarded compensatory and statutory damages;

E. That Plaintiff be awarded liquidated damages because of Defendants' reckless and willful disregard of Plaintiff's protected rights;

F. That Plaintiff be awarded Attorney's fees and costs; and

G. That Plaintiff be awarded any and all appropriate relief under the circumstances.

Respectfully Submitted

/s/ Eric Onyango

Eric Onyango
Prime Legal, LLC
222 North Columbus Drive Suite 1507
Chicago, IL 60601
Counsel for Plaintiff